THE WALLACE BARNES COMPANY *vs.* WILLIAM ZACHS ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 13th—decided July 25th, 1933.

*Samuel Rosenthal* and *Louis E. Nassau,* for the appellant (defendant).

*Epaphroditus Peck,* for the appellee (plaintiff).

AVERY, J. The material facts in this case as disclosed by the finding are these: The defendant Zachs was treasurer of The Everlast Spring Company which had been buying merchandise from the plaintiff. To

continue this credit, Zachs with the other defendant, Safran, executed a guaranty on November 2d, 1928, a copy of which is quoted in the footnote.

On receipt of this guaranty, the plaintiff delivered additional merchandise to the Spring Company until, on January 1st, 1929, there was due $4374.08. During January and February, 1929, the plaintiff repeatedly demanded payment not only from the Spring Company but from Zachs and Safran, and they asked the plaintiff not to institute legal proceedings. For their accommodation, and to fix a definite time for payment, the plaintiff, on March 10th, 1929, accepted a two months' note from the Spring Company, which Zachs and Safran personally endorsed. This note was three times renewed. When the original note matured, it

"Please sell and deliver to the Everlast Spring Company of Hartford, Conn., hereinafter called the purchaser, on your usual credit terms, such goods, wares and merchandise as the purchaser from time to time may select. In consideration thereof we do hereby guarantee and hold ourselves jointly and severally responsible for the payment at maturity of the purchase price of all such goods, wares and merchandise so sold or delivered, whether evidenced by open account, acceptances, notes or otherwise. We hereby severally waive notice of acceptance hereof, notice of amount of sales, dates of shipment or delivery, notice of default in payment, and legal proceedings against the purchaser. This is intended to be a continuing guaranty applying to all sales made by you to said purchaser from this date, and it shall not be revoked by the death of the guarantors or either of them, but shall remain in full force as against each of said guarantors or his estate until he, or his executor or administrator, shall have given notice in writing by letter sent by registered mail to you to make no farther advances on the security of this guaranty, and until such notice shall have been received by you. . . . And in consideration of your continuing to extend credit to the said purchaser on orders already given by said purchaser, and refraining from bringing legal proceedings against said purchaser at the expiration of the terms of credit on such orders, it is understood and agreed that the above guaranty shall apply to orders already given by said purchaser, whether or not they have been filled at the date of this guaranty, in the same manner as to orders hereafter given."

was reduced by a payment of $275.59 and a new two months' note, endorsed by the defendants, was given. When this latter note matured, it was reduced by the payment of $300 and another two months' note in the sum of $3500, again endorsed by the defendants, was given. When this note matured, it was not reduced in amount, but interest was paid upon it, and another similar two months' note, again endorsed by the defendants, was given to the plaintiff. These notes were not accepted by the plaintiff as payment of the debt of the Spring Company, or in discharge or in lieu of the guaranty, or as additional security, but because Zachs had asked the plaintiff to handle the balance in this manner. When the last note matured, it was presented for payment at the bank, but was not paid.

The language of the instrument, viewed in the light of the situation of the parties as disclosed by the finding, evidences without question an absolute and unqualified undertaking upon the part of the guarantors to pay for merchandise, both past and future, which might be furnished by the plaintiff to the Spring Company. In *Sage* v. *Wilcox*, 6 Conn. 81, we had before us an instrument reading "I hereby guaranty the payment of the within note, one year from this date;" and the four judges were equally divided as to whether this constituted a conditional or absolute guarantee. In the following cases, however, the guarantees were held to be absolute: "I hereby guaranty payment;" *Breed* v. *Hillhouse*, 7 Conn. 523; "We guarantee the within note until paid;" *City Savings Bank* v. *Hopson*, 53 Conn. 454, 5 Atl. 601; "We guarantee payment of the within note;" *Loomis Institute* v. *Hurd*, 57 Conn. 435, 18 Atl. 669; "I hereby guarantee the punctual payment," etc.; *Tyler* v. *Waddingham*, 58 Conn. 375, 395, 20 Atl. 335; "We sign the above note for security for payment thereof which we hereby guarantee;" *Beards-*

*ley* v. *Hawes,* 71 Conn. 39, 43, 40 Atl. 1043; "I hereby guarantee the payment of said rent;" *Garland* v. *Gaines,* 73 Conn. 662, 666, 49 Atl. 19; "I hereby guarantee . . . .the full payment of the note;" *Higinbotham* v. *Manchester,* 113 Conn. 62, 72, 154 Atl. 242. In at least two of these instances, the guaranties before the court were upon separate instruments from that the payment of which was in question. *Tyler* v. *Waddingham,* and *Higinbotham* v. *Manchester, supra.* The language of the guaranty before us is "We do hereby guarantee and hold ourselves jointly and severally responsible for the payment at maturity of the purchase price," etc.; this falls fully within the precedents we have cited, and the conclusion that the intent was to make it an absolute rather than a conditional guaranty gathers weight rather than otherwise from the statement that the signers held themselves jointly and severally responsible for the payment; nor is there anything in the terms of the instrument which reasonably can be construed to evince a different intent.

The guaranty being absolute, no steps were required to enforce the debt against the principal before proceeding against the guarantors. *Beardsley* v. *Hawes,* and *Higinbotham* v. *Manchester, supra.* The notes were taken at the request and with the knowledge of the guarantors and with no intent on the part of any of the parties that the contract of guaranty was thereby affected. The interest was paid after the debt had long matured, upon the third renewal of the note. This imposed no additional burden upon the guarantors. The agreement provided for payment of the accounts at maturity; this necessarily implied interest after maturity. Interest on sums past due is in the nature of a penalty for the wrongful detention of money due. *Healy* v. *Fallon,* 69 Conn. 228, 37 Atl. 495; *Capitol City Lumber Co.* v. *Sudarsky,* 95 Conn. 336, 341, 111

Atl. 349. The evidence does not justify an addition to the finding that the Spring Company entered into any agreement with the plaintiff for the payment of interest on the indebtedness.

There is no error.

In this opinion the other judges concurred.